In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Donald J. HARMAN, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant-Respondent,

v.

Donald J. HARMAN, Respondent-Appellant.

Supreme Court

*No. 99–2862–D. Decided May 22, 2003.*

2003 WI 45

(Also reported in 661 N.W.2d 403.)

¶ 1. PER CURIAM.   We review the recommendation of the referee that Donald J. Harman's petition seeking the reinstatement of his license to practice law in this state be denied. Donald Harman has not appealed from that recommendation. After our review pursuant to SCR 22.33(3) we adopt the referee's findings and agree that Harman has not met his burden imposed by SCR 22.31 of demonstrating by clear, satisfactory, and convincing evidence that his resumption of the practice of law would not be detrimental to the administration of justice or subversive to the public interest. Accordingly, we deny Harman's petition for

reinstatement.[1] Furthermore, we direct that the costs of these reinstatement proceedings totaling $2243.35 be paid by Harman.

¶ 2. In an opinion filed June 26, 2001, this court suspended Donald J. Harman's license to practice law in this state for a period of six months effective August 1, 2001. *In re Disciplinary Proceedings Against Harman,* 2001 WI 71, 244 Wis. 2d 438, 628 N.W.2d 351. Harman's license was suspended based on the determination that he had committed eight separate counts of professional misconduct stemming from two separate courses of conduct. Harman had mishandled a settlement check by wrongfully endorsing the check on behalf of the subrogor without any authorization, by failing to provide the subrogor with prompt written notice of his receipt of funds, and by unilaterally disbursing a reduced amount in purported settlement of the subrogor's claim without the subrogor having agreed to accept the reduced amount. This court determined that this course of conduct constituted three separate violations of the rules of professional responsibility. 2001 WI 71, ¶ 17.

¶ 3. The second course of conduct leading to Harman's six-month suspension involved his conflict of interest in representing two clients. Harman repre-

---

[1] Effective April 1, 2002, SCR 22.31 was restructured. *See* 2002 WI 8, 249 Wis. 2d xiii. Harman's petition for reinstatement was filed prior to the effective date of this restructuring; nevertheless, the newly reformatted SCR 22.31 retains the requirement that a petitioner for reinstatement demonstrate that his or her resumption of the practice of law would not be detrimental to the administration of justice or subversive of the public interest. *Id.* The referee stated that her recommendation to deny Harman's petition for reinstatement would be the same under either version of SCR 22.31.

sented both S.W. and her boyfriend and inappropriately used information obtained in the course of his representation of S.W. by improperly disseminating S.W.'s medical records to various sources without her authorization. With respect to this conduct, this court determined that Harman had violated five rules of professional responsibility including rules pertaining to conflicts of interest and confidentiality. 2001 WI 71, ¶¶ 30, 35.

¶ 4. The six-month suspension of Harman's license ordered by this court was the fourth time he had been disciplined for professional misconduct. One of his prior disciplinary cases, like the instant one, also involved a conflict of interest. [When Harman's license was suspended for six months, this court, as it had done in the past, ordered Harman to pay the Office of Lawyer Regulation (OLR) the costs of that disciplinary proceeding.] This court's order specified that if those costs were not paid within 60 days, and absent a showing that Harman was unable to pay the costs within that time, his license to practice law in this state should remain suspended until further order of this court. 2001 WI 71, ¶ 38.

¶ 5. On November 20, 2001, Harman petitioned this court for reinstatement of his license to practice law. Attorney Linda Balisle was appointed as referee to conduct a hearing on that petition under the procedures set out in SCRs 20.30 and 22.31. After a public hearing, Referee Balisle filed a report recommending that Harman's petition for reinstatement be denied.

¶ 6. In her report, Referee Balisle made several findings of fact regarding Harman's inability to make payment of the previously imposed costs relating to this disciplinary proceeding and the prior proceedings. The referee found that Harman had an obligation to repay

over $17,000 in costs associated with his most recent disciplinary proceeding and a prior disciplinary matter; however, the referee found that the last payment Harman had made on that prior matter was on July 6, 1999 and that he had paid nothing on the costs stemming from his most recent disciplinary proceeding that led to his six-month suspension. The referee further determined that Harman's financial circumstances have made it difficult, if not impossible, for him to pay the costs associated with the disciplinary matters. The referee detailed Harman's current financial situation reflecting his limited current income, unpaid obligations including tax liens and civil judgments, and other debts. Based on those findings, the referee's first conclusion of law was:

> Given Harman's financial circumstances, his failure to continue to make payments toward his financial obligations incurred in this and a prior disciplinary matter should *not* be deemed a basis to deny reinstatement.

(Emphasis added.)

¶ 7. The referee further concluded, however, that Harman had not met his burden imposed by SCR 22.31 of demonstrating by clear, satisfactory, and convincing evidence that his resumption of the practice of law would not be detrimental to the administration of justice or subversive to the public interest. The referee determined that

- Harman's petition and testimony at the hearing did not reveal a proper understanding of or appropriate attitude toward the standards imposed on members of the bar and that he would in the future act in conformity with those standards.

- Harman's petition and testimony at the hearing

326

did not reflect that he could safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them or otherwise act in matters of trust and confidence and in general to aid the administration of justice as a member of the bar of this state.[2]

- Since his suspension Harman had made only minimal efforts to educate himself on the ethical rules applicable to the practice of law, and that failure reinforced the conclusion that he does not have a proper understanding or attitude toward the standards imposed on members of the bar.

- Harman's continued tendency to blame some of his misconduct on others supports the conclusion that he does not properly understand the standards imposed on members of the bar, that he would be unlikely to act in conformity with the ethical standards in the future, and that he could not be trusted to conform with those standards in representing future clients.

¶ 8. As noted, Harman has not appealed from the referee's report, findings of fact, conclusions of law and recommendation that his petition for reinstatement be denied. He has, however, filed an objection to the statement of costs subsequently filed by OLR with respect to this reinstatement proceeding. Harman

---

[2] The referee was particularly concerned that it was likely that Harman would not act in conformity with the ethical standards in the future given his inability to appreciate the scope and gravity of the attorney/client relationship and the need for attorney/client confidentiality as demonstrated by his actions in this case and by his testimony at the public hearing on his reinstatement petition.

maintains that the imposition of such costs would constitute an undue burden on him. He notes that the referee determined that he is unable to pay costs now or in the foreseeable future given his lack of funds.[3]

¶ 9.   Harman's objection to the imposition of costs focuses on his claim that he should not now be assessed costs in these reinstatement proceedings because the referee concluded that he is unable to pay the already incurred costs now or in the future. As OLR correctly points out, however, the referee's report in this case is silent with respect to the issue of imposition of costs for these reinstatement proceedings. Instead, the referee simply noted that given Harman's current financial circumstances, the denial of his petition for reinstatement should *not* be based upon his failure to pay the previously imposed costs for disciplinary proceedings, including the one which resulted in the six-month suspension of his license. Nowhere in her report did the referee find or suggest that Harman should be absolved from being required to pay the costs of this current reinstatement proceeding. In the past this court has assessed costs in reinstatement proceedings where the respondent has been denied reinstatement. *See In re Disciplinary Proceedings Against Eisenberg,* 122 Wis. 2d 627, 632, 363 N.W.2d 430 (1985). This court has

---

[3] Harman initially objected on two bases to the OLR's statement of costs: First, he complained that the OLR had not provided sufficient detail as to allow him to determine the reasonableness of the requested costs. OLR in its response to Harman's objection has now provided a detailed itemization of the costs including a breakdown of hourly counsel fees, referee's fees, court reporter's fees, and the costs of the newspaper notice of the hearing. Harman's objection on that basis is no longer valid. His second objection is discussed above in this opinion.

specific authority under SCR 22.24 to assess costs against the respondent in a reinstatement proceeding.[4]

■

¶ 10.   We determine that the record supports the referee's findings with respect to Harman's petition for reinstatement and we adopt them. We also agree and conclude that Harman has not met his burden imposed by SCR 22.31 of demonstrating by clear, satisfactory, and convincing evidence that his resumption of the practice of law would not be detrimental to the administration of justice or subversive to the public interest. Accordingly, we deny his petition for reinstatement.

■

¶ 11.   We further determine that OLR's request for costs in the amount of $2243.35 incurred in this reinstatement proceeding should be granted. Reinstatement proceedings—even if unsuccessful—should not be free. OLR's detailed itemization of the requested costs demonstrates that the costs are reasonable and warranted under the circumstances. Accordingly we impose the costs in the amount requested.

¶ 12.   IT IS ORDERED Donald J. Harman's petition for reinstatement of his license to practice law in this state is denied.

¶ 13.   IT IS FURTHER ORDERED that within 60 days of the date of this order Donald J. Harman shall pay to the Office of Lawyer Regulation the costs of this reinstatement proceeding. If the costs are not paid within the time specified, and absent a showing to this

---

[4] SCR 22.24 provides in pertinent part: "Assessment of costs. (1) The supreme court may assess against the respondent all or a portion of the costs of a . . . reinstatement proceeding and may enter a judgment for costs. . . . Costs are payable to the office of lawyer regulation."

court of his inability to pay the costs within that time, the license of Donald J. Harman to practice law in Wisconsin shall remain suspended until further order of the court.