STATE, Plaintiff, v. EISENBERG, Defendant.

*November 5—November 30, 1965.*

234

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe.

For the defendant there was a brief by *Anderson, Bylsma & Eisenberg* and *Clarence G. Bylsma,* all of Madison, and oral argument by *Clarence G. Bylsma.*

PER CURIAM. Defendant Donald S. Eisenberg is a lawyer, aged thirty-one, married, and has two children.

He has practiced law in Madison since his admission in September, 1956.

The will in question, drafted by defendant, was before this court in *Estate of Perssion*.[1] Objection to its admission had been made on behalf of Mrs. Carol Catherwood, Perssion's daughter, then twenty years of age. It was claimed that the will resulted from undue influence exercised by defendant and his mother. The county court admitted the will.

Mrs. Catherwood appealed. We affirmed, holding that there was an inference of undue influence arising because the present defendant, the attorney who drew and supervised the execution of the will is a member of the family of the beneficiary, but that the inference was "overcome by other evidence the trial court considered more persuasive." In that opinion we pointed to evidence that Mr. Perssion was independent, very stubborn, and tenacious; that he considered defendant immature and often did not follow defendant's advice; that he was fifty-two when he made the will, and was not infirm.

The testimony in the present proceeding is not identical, but leaves very much the same impression, *i. e.*, that Mr. Perssion was unusually self-willed. It appears that both his wife and his daughter learned the contents of the will during his life, but apparently deemed it consistent with his peculiarities.

Defendant argues that when considered in the light of the circumstances, *i. e.*, the strained relationship between Mr. and Mrs. Perssion, Mr. Perssion's hurt over the fact that Carol had secretly married, and the fact that Mr. Perssion's sister, defendant's mother, had been close to him and had helped him financially, the will was natural. Defendant also argues that there was no conflict of interest in connection with the will, which disinherited Mrs. Perssion and Carol and left everything to defendant's mother, from whom defendant might someday inherit.

[1] (1963), 20 Wis. (2d) 537, 123 N. W. (2d) 465.

Defendant, however, misses the point. The will is unnatural on its face, and his probable interest in the benefits conferred upon his mother is sufficient that an inference of undue influence arises because of his activity in drawing and supervising the execution of the will.[2] It was his duty as a lawyer, both to his client, and to the profession of which he is a member, to avoid so acting as to raise that inference.[3] At the very least, he should have declined to supervise the execution of the will.

Defendant, it seems to us, is saying that it would have been useless for him to argue with his uncle and that if he had declined to draw or supervise the execution of the will, his uncle would have had someone else do it, or would have drawn and executed the same will without the assistance of any lawyer. It may well be that Mr. Perssion would have done so, but it was defendant's duty to put him to that test or in some other way insure that there would be competent evidence which would readily and clearly overcome any inference of undue influence.

It should be noted that it appeared to be easy to prove the unhappy relationship between Mr. and Mrs. Perssion, and thus to establish that disinheriting the wife was not the result of undue influence. This was not the case with respect to disinheriting the daughter. Although there was evidence that Mr. Perssion had been hurt by the circumstances of her marriage, and that he disapproved of his son-in-law, there was also evidence that a relationship of love and affection between father and daughter continued thereafter. As noted in paragraph "E" of the referee's findings, above quoted, the referee had great difficulty in discovering any reason for Mr. Perssion completely disinheriting his daughter. Although Mr. Perssion surely had the right to do so, without justifying his action to anyone, the fact that such justification is difficult makes it harder to dispel the inference of undue

---

[2] *Estate of Perssion, supra,* footnote 1.

[3] *State v. Horan* (1963), 21 Wis. (2d) 66, 123 N. W. (2d) 488.

influence and more obvious that defendant should have avoided creating such inference.

Paragraph "D" of the findings of the referee is undoubtedly based upon the defendant's admission that he did not discuss with his uncle the possibility of creating a trust for Carol's benefit. In arguing that Perssion's gift of all his property to his sister was not unnatural, defendant suggests that Perssion assumed that his sister would take care of Carol if Carol were in need. Assuming, as this argument suggests, that Perssion was interested in the welfare of his child, it seems highly probable that a disinterested attorney would have pointed out to him the possibility of a trust provision under which Carol would receive benefits as a matter of right. Although defendant's failure to do this may have been only a deficiency of skill or judgment, the conflict of interest may suggest to the observer that the failure was motivated by self-interest.

In *State v. Horan*,[4] decided after defendant drew the Perssion will, we said:

"Because the law on this subject has not been clearly defined or well understood by the members of the legal profession and no undue influence is involved, we deem a reprimand and the payment of costs to be sufficient." [5]

We reach the same decision here except to limit the amount defendant must pay. The costs in this proceeding are very substantial, approximately $3,200, and it seems sufficient to require defendant to pay $1,750 thereof.

It is ordered and adjudged that, the defendant be and hereby is reprimanded for his conduct and that he pay the sum of $1,750 toward the costs and expenses of these proceedings including the fees and disbursements of the attorney for the plaintiff.

WILKIE, J., took no part.

---

[4] *Supra*, footnote 3.

[5] *State v. Horan, supra*, page 75, footnote 3.